UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

LIBERTY MUTUAL INSURANCE
COMPANY,                                            CASE #: 0:10-cv-62365-FAM

      Plaintiff,
v.

THE UNITED STATES OF AMERICA, *ex rel*
STEVEN R. TURNER, UNITED STATES
ASSISTANT TRUSTEE, REGION 21, AND
ALL PANEL TRUSTEES OR SUCCESSOR
TRUSTEES CLAIMING THROUGH THE
UNITED STATES TRUSTEE; ROBERT FURR,
JOEL TABAS, AND SONEET KAPILA,
SUCCESSOR TRUSTEES TO MARIKATOLZ,

      Defendants.
_____/

**RESPONSE AND MEMORANDUM OF DEFENDANT, JOEL L. TABAS,
AS SUCCESSOR TRUSTEE, IN OPPOSITION TO LIBERTY MUTUAL
INSURANCE COMPANY'S MOTION FOR PRELIMINARY INJUNCTION**

      Defendant, Joel L. Tabas, as Successor Trustee to Marika Tolz, and pursuant to Local Rule 7.1, files his Response and Memorandum in Opposition to Liberty Mutual Insurance Company's Motion for Preliminary Injunction.

**I.    BACKGROUND**

      1.    This case commenced on December 6, 2010, when Plaintiff, Liberty Mutual Insurance Company ("Liberty"), filed its Complaint for Interpleader and Injunctive Relief [D.E. 1] (the "Complaint").

      2.    The Complaint seeks statutory and rule interpleader of a Blanket Bond of Trustee Cases under Chapter 7 and Chapter 11, Provided it is a Liquidation and not a Reorganization, naming the United States of America as obligee, and naming as principals various individuals who served as trustees in Chapter 7 and Chapter 11

bankruptcy cases in the Southern District of Florida, including Marika Tolz (the "Blanket Bond").  The Complaint also seeks permanent injunctive relief to, among other things, prevent the named defendants from "instituting or prosecuting any proceeding in the any State or United States court affecting the [Blanket] Bond."

3. Along with its Complaint, Liberty filed a Motion and Memorandum in Support of Request for Preliminary Injunction [D.E. 7] (the "Preliminary Injunction Motion"), which seeks preliminary injunctive relief restraining the defendants from instituting or prosecuting any proceeding in any State or United States court affecting the Blanket Bond.

4. Presently pending before the United States Bankruptcy Court for the Southern District of Florida are several cases which Plaintiff alleges may affect the Blanket Bond, including Case Number 01-28967-BKC-JKO, the consolidated Chapter 7 Bankruptcy case of Fuzion Technologies Group, Inc. and Fuzion Wireless Communications, Inc., and the related adversaries bearing case numbers 10-03610-BKC-JKO, 10-03626-BKC-JKO and 10-03628-BKC-JKO (collectively the "Bankruptcy Cases").

**II.   THIS COURT SHOULD REFRAIN FROM ISSUING A PRELIMINARY INJUNCTION UNDER 28 U.S.C. §2361 BECAUSE A PREVIOUSLY COMMENCED ACTION WILL AFFORD THE PARTIES EFFECTIVE RELIEF, LIBERTY DOES NOT FACE MULTIPLE LIABILITY ON THE SAME FUNDS**

**A.   The Statutory Injunction Sought is Discretionary**

28 U.S.C. § 2361 provides, in relevant part:

In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, *a district court may* issue its process for all claimants and enter its order restraining them... (emphasis added).

Thus, while a district court has the power to grant a preliminary injunction in a case brought pursuant to the statutory interpleader, it also has the discretion to deny a

motion for preliminary injunction when competing factors weigh in favor of such denial. *Commerce & Industry Ins. Co. v. Cablewave Ltd*, 412 F. Supp. 204 (S.D. NY 1976)("the issuance of an injunction under 28 U.S.C. 2361 is discretionary"); *The Home Indemnity Co. v. Moore*, 499 F.2d 1202 (8th Cir. 1974)(appropriate exercise of court's discretion to deny interpleader action on basis that adequate relief was available in another proceeding).

In exercising its discretion, a court should be guided by the following principles: 1) a federal court should not take lightly the decision to enjoin proceedings pending in another federal court; 2) interpleader relief may be denied if there is an adequate remedy elsewhere; and 3) where an action involving the same parties and claims is pending, the court should give deference to the claimant's choice of forum. *Id.* (internal citations omitted).

**B.   Adequate Relief is Available to the Parties in a Previously Commenced Action**

Actions involving the same parties as are before this Court have already been brought in the Bankruptcy Court for the Southern District of Florida, a court which has explicitly been provided the power set forth in Federal Rules of Bankruptcy Procedure 7022, 7042, and 7065 to grant the same remedies (interpleader and injunctive relief) requested by Liberty in this proceeding.

There is considerable logic in having federal courts refrain from enjoining actions pending in other federal courts. First, the federal courts are bound by a single body of law with uniform application among all litigants, such that no single litigant may have any legitimate interest in demanding that one federal court determine the application of the law to its case in favor of another federal court. *Commerce & Industry*, 412 F. Supp.

at 207.  Moreover, the policy against allowing a later-filed proceeding to dictate the outcome of an earlier filed case is designed to prevent waste of judicial resources by having one federal court duplicate the work of another, particularly where effective relief may be afforded the parties in the previously commenced action.  *The Home Indemnity Co. v. Moore*, 499 F.2d 1202 (8th Cir. 1974)("a court may dismiss or stay an interpleader proceeding if an action already pending before another court might obviate the need for employing the interpleader remedy or eliminate the threat of multiple vexation.  This certainly would be the case if the disputed issues are likely to be resolved in the other proceeding."); *see also Equitable Life Ins. Society of the U.S. v. Cooper*, 328 F. Supp. 1126 (W.D. Ok. 1971)(inappropriate to preliminarily enjoin parties from bringing suit effecting interplead proceeds because same subject matter and parties were before another court in previously filed action, where same relief sought could be afforded).  Each of these factors, when applied to the facts before this Court, militates against granting Liberty's request for an injunction.

The record reflects that the bankruptcy court has already spent substantial time and effort becoming familiar with the proceedings pending before it, including review of evidence of Tolz's defalcations to determine the issue of forfeiture of Tolz's fees.[1]  Of material import, evidence of Tolz's defalcations will also determine the issue of Liberty's liability under the Blanket Bond. Thus, enjoining the pending proceedings would cause this Court to duplicate the efforts of the bankruptcy judge.  *Commerce & Industry*, 412 F.

---

[1]  It is not overly cynical to question whether the bankruptcy judge's familiarity with the evidence of the defalcations at issue is the primary, if not sole driver, of the forum shopping nature of Plaintiff's request in this matter.

Supp. 204 at 207 (S.D. NY 1976) (denial of the injunction is "particularly appropriate when… substantial time of the court and litigants has been invested…").

The bankruptcy court may, if appropriate, allow Liberty to interplead the Blanket Bond as easily as this Court, just as it may consolidate the matters pending before it. See Fed.R.Bankr.P. 7022 and 7042. In this regard, it is noteworthy that each of the proceedings listed in Liberty's Motion are currently pending before the same bankruptcy court and the same bankruptcy judge, which in turn have the power to issue injunctions. See Fed.R.Bankr.P. 7065. Liberty may request that the bankruptcy court provide every form of relief as it seeks from this Court, and this alone is good grounds to deny the motion for preliminary injunction. *Commerce & Industry*, 412 F. Supp. at 207 ("In the interest of judicial economy, if an action is already pending against a party who desires to interplead others, that party should proceed by way of counterclaim").

Another good basis for denying the Preliminary Injunction Motion is revealed by balancing the danger of multiple litigation against the policy of allowing claimants to proceed in the forum of their choice. *Prudential Ins. Co. of America v. Trowbridge*, 313 F. Supp. 428 (D. Conn. 1970) (citing *Federal Practice and Procedure* 1709 at 534 n. 9 (1996)("A court may dismiss or stay and interpleader proceeding if an action already pending before another court might obviate the need for employing the interpleader remedy or eliminate the threat of multiple vexation. This certainly would be the case if the disputed issues are likely to be resolved in the other proceeding.")). Here, the claimants in the Bankruptcy Cases have already chosen the bankruptcy court as the forum in which to have the claims subject of the Blanket Bond adjudicated.

There is no doubt that Liberty will incur the costs necessary to litigate each of the claims asserted against it in the bankruptcy courts regardless of the forum in which the litigation occurs. Further, the litigation will not occur throughout various forums, but in one federal court and before one judge, regardless of whether that judge sits in district or bankruptcy court. Therefore, the instant interpleader action will not accomplish what the remedy was properly designed to do, reduce costs through avoiding having to defend multiple conflicting claims. Instead, Liberty is merely using the interpleader action as a way to forum shop, as the bankruptcy court can provide all the relief sought herein. Since there would be little in the way of benefit to the parties in saving costs or to Liberty in preventing multiple suits against it, the desire to allow the claimant to choose the forum for the litigation outweighs the dubious benefits provided by an interpleader action.

### C.  Liberty Does Not Face Multiple Liability on the Same Funds

Interpleader actions are designed to prevent an insurer from facing multiple liabilities on the same funds. *Fulton v. Kaiser Steel Corp.*, 397 F.2d 580 (5th Cir. 1968). The relief available in a suit for or in the nature of interpleader, whether prosecuted under 28 U.S.C §1335 or rule 22 of the Federal Rules of Civil Procedure, is the avoidance of unnecessary litigation or risk of inconsistent or excessive loss through multiple liability on a single obligation. *Id.* (citing *Libby, McNeill & Libby v. City Nat. Bank*, 592 F.2d 504 (9th Cir. 1978) (mere potentiality of double liability on part of stakeholder was insufficient to sustain interpleader jurisdiction.)). There must be some real and reasonable fear of exposure to double liability to permit maintenance of interpleader action. *Francis I. duPont & Co. v. O'Keefe*, 365 F.2d 141 (7th Cir. 1966); *Savage v. First Nat. Bank & Trust Co. of Tulsa*, 413 F.Supp. 447 (N.D. Okla. 1976)

(interpleader inappropriate where plaintiff could not show that it faced multiple liability on the same funds).

In the instant case, Liberty's liability is not limited to the Penal Sum but is extended to the full amount of the Blanket Bond, the proceeds of which are more than sufficient to cover the full amount of each of the claims in the Bankruptcy Actions. Though Liberty blankly asserts that it filed the interpleader action to avoid "liability beyond the Penal Sum" of the Blanket Bond, Liberty provides no basis whatsoever to establish that it is liable only to the extent of the Penal Sum and not for the face amount of the Blanket Bond. However, the Blanket Bond, attached as Exhibit 1 to the Preliminary Injunction Motion, clearly establishes Liberty's liability to the full extent of coverage provided there under.

First, the plain meaning of the term "blanket bond" is that is provides wide coverage for the principals covered by the bond. *Fid. Trust Co. v. Am. Sur. Co. of N. Y.*, 268 F.2d 805 (3rd Cir. 1959)(the term "Blanket Bond", used by corporate surety to designate contract of suretyship, indicated that coverage was to be wide, and contract was to be interpreted in that fashion."); *Eglin National Bank v. The Home Indemnity Co.*, 583 F.2d 1281 (5th Cir. 1978)("Fidelity bonds covering losses caused by dishonest or fraudulent acts are to be broadly construed and, as with other insurance contracts, any ambiguity is construed most strongly against underwriter."); *See also, Standard Title Ins. Co. v. United Pacific Ins. Co.*, 364 F.2d 287 (8th Cir. 1966)(finding that the plain language of the blanket bond provided coverage for the acts of all agents of the insured, regardless of whether the insured obtained a written agency contract with the agent since nothing in the blanket bond required a written agreement. The court reasoned

7

that the "bond issued was a blanket bond covering all agents meeting the policy agency definition."). Here, the Blanket Bond covers all Trustees listed therein as principals. Nothing in the Blanket Bond attempts or asserts to limit Liberty's liability to the Penal Sum referenced in the Preliminary Injunction Motion.

Second, the Blanket Bond states that:

> The aggregate liability of the Surety hereunder shall not exceed the face amount of this bond, regardless of the number of years this bond is in effect, regardless of the number of cases involved and regardless of the number of trustees involved. The Surety's liability in each case covered by this bond shall become effective on the date of this bond.

Pursuant to Exhibit 2 of the Preliminary Injunction Motion, the Renewal Certificate lists the face amount of the bond as $78,020,000.00. Nowhere in this paragraph nor anywhere else in the Blanket Bond does the surety limit its liability to any amount other the full face amount of the Blanket Bond. Thus, consistent with the plain language of the Blanket Bond, Liberty is liable to the full extent of the Blanket Bond. *Empire Indem. Ins. Co. v. Winsett*, 325 Fed. Appx. 849 (11th Cir. 2009) ("[i]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision").

Indeed, Liberty's assertion that its exposure should be limited to that proration of the Blanket Bond attributable to Marika Tolz's premiums and deposits is not only contrary to the common construction of the term "blanket," but also contrary to the clear legal precedent construing the concept of "blanket" coverage.

In *Monumental Paving & Excavating Inc. v. Penn. Manufacturers Ass'n Ins. Co.*, 176 F.3d 794 (4th Cir. 1999), the Fourth Circuit was confronted with a blanket replacement policy that had also been accompanied by a "statement of values" in which

8

the insured stated a value for the insured personal property that was well below the replacement value. The court held that a blanket policy is "written on a risk as a whole, embracing whatever articles or items are included therein, often changing in nature." *Id.* at 798. The court then held that the statement of values, when used in connection with a blanket policy, was not actually part of the policy and could not limit damages to the sum stated on the statement of values. *Id.* at 798-99.

The *Monumental Paving* court relies upon an older Fifth Circuit case, *Reliance Ins. Co. v. Orleans Parish School Bd.,* 322 F.2d 803 (5th Cir. 1963), for the definition of a blanket policy. In *Reliance*, the court held that while the statement of values had been incorporated into the blanket policy by reference, the insured was due a replacement value higher than the amount reported on the statement of values. *Id.* at 807. *See also Forrest v. Northland Casualty Co.,* 213 F. Supp. 2d 1023, 1025-26 (W.D. Ark. 2002) (insured not permitted to recover valuation of house stated in policy application because it did not represent an agreed-to value of the house; rather, the statement of values was furnished for purpose of arriving at an average rate for the policy); *Abraxas Group, Inc. v. Guaranty Nat'l Ins. Co.,* 648 F. Supp. 304, 307 (W.D. Pa. 1986) (rejecting insurer's contention that schedule of values acted as a cap on insured's recovery; finding "particularly persuasive" the fact that "the amount of insurance listed on page one is $3,709,267, and this is listed without qualification or reference to any separately valued items" and noting that the schedule of values "arguably never was a part of the policy and instead was "clearly used to evaluate the cost of the overall blanket coverage issued."); *Columbia College v. Penn. Ins. Co.,* 157 S.E.2d 416, 425 (S.C. 1967) (court held valuation clause, which was a part of the policy, could not determine liability under

the policy because the policy denominated itself as a blanket insurance policy).

Furthermore, the Blanket Bond does not ascribe values or prorate the coverage in any manner to the trustees/principals specified on Schedule "A" thereto. The Blanket Bond merely lists those trustees/principals. Therefore, this instant matter presents a stronger case against Liberty's tortured and unsupported construction of the term "blanket" than the arguments rejected in the cases cited above, since the Blanket Bond here does not even attribute specific values to any particular trustee/principal.

Moreover, a recent decision from the United States Bankruptcy Court for the Northern District of Texas involving a creditor suing on the blanket bond issued by Liberty Mutual Insurance Company covering bankruptcy trustee's in the Northern District of Texas (the "Texas Blanket Bond") where Liberty's liability is limited to $300,000 per case and $8,000,000 per trustee, illustrates Liberty's misinterpretation of the clear language of the Blanket Bond in this case which contains no such limiting language. *United States of America by Lamesa Nat'l Bank v. Liberty Mutual Surrety (In re Schooler)*, 01-51003-RLJ-7, Adv. No. 09-05011, 2010 WL 1946268 (Bankr. N.D. Tex. May 13, 2010). A copy of the Texas Blanket Bond that is attached as an exhibit to the plaintiff's motion for summary judgment filed in the *Lamesa* case [DE # 16 in Adv. 09-05011, Appendix 16-20] is attached hereto as **Exhibit "A"**.

The claims set forth in Liberty's Preliminary Injunction Motion do not seek damages in excess of the face amount of the Blanket Bond. As a result, Liberty does not face the possibility of multiple liabilities as to the same funds. Thus, Liberty is not entitled to maintain the instant action.

## II. LIBERTY IS NOT ENTITLED TO A PRELIMINARY INJUNCTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 65

Liberty must show the following to obtain an preliminary injunction under a Federal Rule of Civil Procedure 22 interpleader action:

> (1) A substantial likelihood of success on the merits; (2) the movant will suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the movant in the absence of the injunction would exceed the harm suffered by the non-movant; and (4) that the injunction will not disserve public interest.

*North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.2d 1211, 1217 (11th Cir. 2008). Liberty not only fails to meet *all* of these prongs required for injunctive relief, it fails to meet *any* of them.

First, Liberty is unlikely to succeed on the merits of interpleader action because Liberty does not face claims that exceed the Blanket Bond, Liberty could seek a determination in the Bankruptcy Cases on the scope of its obligations and defenses under the Blanket Bond binding on all parties before this Court, such that Liberty is not at risk of inconsistent and/or conflicting rules. Liberty's contention that it is subjected to multiple claims that exceed the amount of coverage provided by the Blanket Bond [Preliminary Injunction Motion at p. 7] is devoid of merit. The plain language of the Blanket Bond demonstrates Liberty is liable for the full amount of coverage under the Blanket Bond; the facts of record fail to demonstrate any reasonable fear that the amount of the claims against Liberty would approach, let alone exceed the amount of coverage provided by the Blanket Bond. As a result, Liberty is not at risk of having multiple liabilities for the same funds.

Second, Liberty complains that the U.S. Trustee has not been joined by the parties in the Bankruptcy Actions and therefore fears that any judgment rendered

therein will not be final. However, Liberty is free to join the U.S. Trustee in the Bankruptcy Cases, Fed.R.Civ.P. 20 and Fed.R.Bankr.P. 7020, and if the instant action were nothing more than a transparent effort to change judges, Liberty would have done so.

Third, as described above, all of the Bankruptcy Cases listed in Liberty's Motion are pending before the same court and the same bankruptcy court judge in the Bankruptcy Cases. As a result, Liberty's argument that it faces risk of inconsistent and/or conflicting rulings on the scope of its obligations and defenses to claims under the Blanket Bond is disingenuous. Liberty has identified no evidence to indicate that the bankruptcy court judge is likely to make inconsistent rulings on matters pending before him regarding the same parties, similar facts and similar questions of law. Thus, there is no basis for legitimate concern that allowing the Bankruptcy Cases to proceed before the bankruptcy court judge where they are pending will result in potential inconsistent rulings.

And because there is no real threat that the bankruptcy court will impose multiple liabilities and inconsistent rulings on the same claim, the proposed interpleader action herein will not "protect" Liberty from such "harm", and accordingly should fail. Certainly Liberty has failed to show that it is likely to succeed on the merits of its interpleader action.

Likewise, Liberty cannot show that it will suffer irreparable harm in the absence of the injunction. Liberty baldly asserts that it is "already exposed to a multiplicity of lawsuits and would be exposed to inconsistent verdicts and liability beyond the funds deposited into the registry of the Court." [Preliminary Injunction Motion p. 8]. However,

as explained above, Liberty is liable for the full amount of the Blanket Bond and thus does not face liability beyond the extent of the coverage of its Blanket Bond. Therefore, the "multiplicity of lawsuits" will not result in inconsistent obligations regarding the same funds, but merely determinations of how a portion (not all) of the Blanket Bond will be allocated among the claimants thereto. No irreparable harm will thus follow from allowing the bankruptcy court to adjudicate the Bankruptcy Cases.

Lastly, Liberty's claim that the interpleader action will serve the public interest because "all claims, facts and defenses will be resolved in a single forum rather than in several different courts" departs from the reality of the case. All of the Bankruptcy Cases Liberty refers to in its Preliminary Injunction Motion are before the same court and the same judge. Rather, allowing this action to move forward would be a disservice to the public interest in encouraging timely and cost efficient resolutions by undermining the substantial work already put into the Bankruptcy Cases by the bankruptcy judge and by causing duplicative litigation in another federal forum.

**IV. CONCLUSION**

Liberty has failed to show entitlement to a preliminary injunction under 28 U.S.C. §2361 or under Federal Rule of Civil Procedure 65. Granting an injunction and allowing the interpleader to proceed will not accomplish any of the goals for which an interpleader action is designed - it will not reduce litigation costs and it will not prevent against liability of the insurer on the same funds. This Court should use its discretion to deny Liberty's improper attempt to forum shop away from the bankruptcy court.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 18, 2011, I electronically filed the foregoing document with the Clerk of the court using CM/ECF. I also certify that the foregoing

document is being served this day on following parties who are currently on the list to receive e-mail notice/service for this case and who therefore will be served via the Court's notice of Electronic Filing:

Alberta L. Adams aadams@mpdlegal.com, jnelson@mpdlegal.com

Brett Devereux Divers bdivers@mpdlegal.com, sjames@mpdlegal.com

Grace E. Robson grobson@houghrobson.com, lgener@houghrobson.com, sramirez@houghrobson.com

Marc Philip Barmat mbarmat@furrcohen.com, ndixon@furrcohen.com

Robert Francis Reynolds rreynolds@slatkinreynolds.com

Grisel Alonso grisel.alonso@usdoj.gov

        Respectfully Submitted,

        /s/ Joel L. Tabas
        Joel L. Tabas
        Florida Bar No. 516902
        Robert B. Miller
        Florida Bar No. 305685
        Tabas, Freedman, Soloff, Miller & Brown , P.A.
        Attorneys for Joel L. Tabas, Trustee
        14 N.E. First Avenue, Penthouse
        Miami, Florida 33132
        Telephone: (305) 375-8171
        Facsimile: (305) 381-7708
        joel@tabasfreedman.com
        rmiller@tabasfreedman.com

Bond # 016018004

# BOND OF INTERIM TRUSTEE AND/OR TRUSTEE IN CHAPTER 7 CASES UNDER TITLE 11 OF THE UNITED STATES CODE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN AND/OR EASTERN DISTRICT OF TEXAS

KNOW ALL MEN BY THESE PRESENTS: That we, Interim Trustee and/or Trustees, named in the attached schedule by reference made a part hereof, as Principal, and Liberty Mutual Insurance Company, as surety, are held and firmly bound unto the United States of America, in the sum of Thirty Million and no/100 dollars ($30,000,000.00), for the payment of which well and truly to be made, we bind ourselves, our heirs, successors, and assigns, jointly and severally, firmly by these presents. The joint and several liability is between each trustee and the surety. No joint and several liability is intended among the individual Trustees.

Whereas, the Principal has been appointed to serve as Trustee in one or more cases under the provisions of Chapter 7 of the Bankruptcy Code for the United States Bankruptcy Court, and

Whereas, as a condition to serving in the capacity as Trustee, Section 322 of the Bankruptcy Code requires that said Principal provide a surety bond for the faithful performance of their official duties as Trustee of the estates of various debtors assigned to the Principal by the United States Trustee.

NOW THEREFORE, if said Principals shall faithfully perform their official duties and orders issued by the Court as Trustee, then this obligation shall be null and void; otherwise to remain in full force and effect.

PROVIDED HOWEVER, that:

1. The liability of the surety shall be limited to Three Hundred Thousand and no/100 dollars ($300,000.00) per case with an aggregate liability of the surety for all cases, in an amount not to exceed Thirty Million and no/100 dollars ($30,000,000.00) for all claims asserted against this bond, regardless of the number of years it is in effect and regardless of the number of cases involved and regardless of the number of Trustees involved.

2. The surety's liability shall be further limited to an aggregate of Eight Million and no/00 dollars ($8,000,000.00) per trustee.

3. The surety may terminate this bond only by giving written notice to the Clerk of the Court and the U.S. Trustee, Northern District of Texas, 1100 Commerce Street, Room 9C60, U.S. Courthouse, Dallas, Texas 75242, at least thirty (30) days prior to the effective termination date.

**EXHIBIT "A"** 16

It is understood and agreed that the surety shall only be liable for acts committed by the Principal prior to the effective termination date of this bond

Signed, Sealed and Dated this 8th day of April, 2001.

LIBERTY MUTUAL INSURANCE COMPANY

By: _____
Clark P. Fitz-Hugh, Attorney-in-Fact

ACCEPTED:

_____
United States Trustee, Northern District of Texas
and/or Eastern District of Texas

/7

In the United States Bankruptcy Court for the Northern and/or Eastern District of Texas. To be attached to and form part of Chapter 7 Blanket Bond Number 016018004 effective April 8, 2001 in the amount of $30,000,000. The following schedule is applicable to the Northern District of Texas:

SCHEDULE

| ITEM NO. | NAME OF TRUSTEE | LOCATION |
| --- | --- | --- |
| 179 | Shawn Kevin Brown | Fort Worth, TX |
| 177 | Donna Christie | Amarillo, TX |
| 22 | James W. Cunningham | Dallas, TX |
| 23 | Harry L. Cure, Jr. | Fort Worth, TX |
| 178 | Carey D. Ebert | Hurst, TX |
| 180 | Marilyn D. Garner | Arlington, TX |
| 52 | Floyd D. Holder, Jr. | Lubbock, TX |
| 128 | John H. Litzler | Dallas, TX |
| 63 | Myrtle D. McDonald | Lubbock, TX |
| 142 | Robert Milbank, Jr. | Dallas, TX |
| 132 | Jeffrey H. Mims | Dallas, TX |
| 130 | Harvey L. Morton | Lubbock, TX |
| 75 | Robert Newhouse | Dallas, TX |
| 82 | Deborah J. Penner | Lubbock, TX |
| 137 | Dianne G. Reed | Waxahachie, TX |
| 176 | Kent Ries | Amarillo, TX |
| 96 | Scott M. Seidel | Dallas, TX |
| 97 | Daniel J. Sherman | Dallas, TX |
| 138 | John Dee Spicer | Hurst, TX |
| 145 | Max R. Tarbox | Lubbock, TX |
| 127 | Robert Yaquinto | Dallas, TX |

It is agreed that each item appearing on this schedule is recognized as a principal under this bond as therein provided.

Signed, Sealed and Dated this 8th Day of April, 2001.

Liberty Mutual Insurance Company

By: Clark P. Fitz-Hugh, Attorney in Fact

Accepted:

United States Trustee, Northern District of Texas and/or Eastern District of Texas

18

In the United States Bankruptcy Court for the Northern and/or Eastern District of Texas. To be attached and form a part of Chapter 7 Blanket Bankruptcy Bond # 016018004 effective April 8, 2001 in the amount of $30,000,000. The following schedule is applicable to the Eastern District of Texas:

## SCHEDULE

| ITEM NO. | NAME OF TRUSTEE | LOCATION |
|---|---|---|
| 001-E | Bob Anderson | Longview, TX |
| 027-E | Daniel J. Goldberg | Houston, TX |
| 026-E | Joyce W. Lindauer | Dallas, TX |
| 010-E | Linda S. Payne | Paris, TX |
| 013-E | Jason R. Searcy | Longview, TX |
| 025-E | Mark A. Weisbart | Dallas, TX |
| 021-E | Stephen J. Zayler | Lufkin, TX |

It is hereby agreed that each item appearing on this schedule is recognized as a principal under this bond as therein provided.

Signed, Sealed and Dated this 8th Day of April, 2001.

Liberty Mutual Insurance Company

By: _____
Clark P. Fitz-Hugh, Attorney in Fact

Accepted:

_____
United States Trustee, Northern District of Texas and/or Eastern District of Texas

19

BOND # 016018004

## RENEWAL CERTIFICATE

To be attached to and made a part of Chapter 7 Blanket Bond #016018004 filed with the U.S. Bankruptcy Court for the Northern and Eastern Districts of Texas with the U.S. Trustee for Region 6.

The attached bond shall be subject to all its agreements, limitations and conditions except as herein expressly amended and further that the liability of the Surety under the attached bond shall not exceed the amount of $49,056,653.00 and shall not be cumulative. The Surety shall have no liability for any losses caused by conduct in which any of the said named principals engaged prior to the effective date of the original bond or the effective date of their being added to the bond.

Trustees:

| | |
|---|---|
| BOB ANDERSON | DEBORAH J. PENNER |
| SHAWN KEVIN BROWN | DIANNE G. REED |
| MICHELLE CHOW | KENT RIES |
| JAMES W. CUNNINGHAM | JASON R. SEARCY |
| CAREY D. EBERT | SCOTT M. SEIDEL |
| MARILYN D. GARNER | DANIEL J. SHERMAN |
| DANIEL J. GOLDBERG | JOHN D. SPICER |
| JOHN H. LITZLER | MAX R. TARBOX |
| MYRTLE D. MCDONALD | MARK A. WEISBART |
| MICHAEL MCNALLY | ROBERT YAQUINTO, JR. |
| CHRISTOPHER MOSER | STEVE J. ZAYLER |
| ROBERT MILBANK, JR. | |
| JEFFREY H. MIMS | |
| HARVEY L. MORTON | |
| ROBERT NEWHOUSE | |
| LINDA S. PAYNE | |

THIS RENEWAL IS IN EFFECT THE 8th DAY OF APRIL, 2009.

SIGNED AND SEALED THIS 10th DAY OF MARCH, 2009.

LIBERTY MUTUAL INSURANCE COMPANY

BY: *Sara S. DeJarnette*

SARA S. DEJARNETTE - ATTORNEY IN FACT

*Approved*
*US Trustee*

20